UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LUIS AMBERT, et. al.,

    Plaintiffs,

v.

CARIBE EQUITY GROUP, INC.; ABNEL CRESPO; RAUL VILLALOBOS; JOE ESPARRA; CARLOS LUGO; ANTONIO MARRERO; GRUPOS DE EMPRESAS DE SALUD CORP.; IC3 BUSINESS ASSOCIATES; CORAZONES UNIDOS COMMUNITY CENTER, INC.; and CYPRESS HEALTH,

    Defendants.

Civil No. 11-1254 (JAF)

## **OPINION AND ORDER**

Plaintiffs bring suit for securities fraud, alleging violations of: (1) section 10(b) ("section 10(b)") of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5 17 ("Rule 10b-5"), C.F.R. § 240.10b-5, by all Defendants for material omissions and misrepresentations; (2) section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), by codefendant Carlos Lugo ("Movant") for control person liability; (3) section 12(a)(1) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77l(a)(1), by Movant and codefendant Caribe Equity Group, Incorporated ("Caribe") for selling unregistered securities in violation of 15 U.S.C. § 77e(a); (4) section 12(b)(2) of the Securities Act, 15 U.S.C. § 77l(a)(1), by Movant and Caribe for failure to issue a prospectus in violation of 15 U.S.C. § 77e(b)(2); (5) Puerto

Rico law by Movant and Caribe for fraud;[1] and (6) Puerto Rico law by all Defendants for "conspiracy." (Docket No. 60.) Movant brings the present motion to dismiss all counts. (Docket No. 65.) Plaintiffs oppose dismissal, (Docket No. 75), and in compliance with this court's order of July 14, 2011, (Docket No. 77), offer supplemental pleadings to address the issue of specificity, (Docket Nos. 80; 82). Movant opposes. (Docket No. 87.) Movant has also moved to strike Plaintiffs' supplement, (Docket No. 83), and Plaintiffs oppose, (Docket No. 84).

## I.

## Factual Synopsis

Looking to the amended "complaint and those documents fairly incorporated into it," SEC v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010), we derive the following factual summary. (See Docket Nos. 60, 82.) Plaintiffs are investors in a public offering of Caribe, a Puerto Rico holding company; each invested between June 2006 and December 2007. (Docket No. 82 at 2.) Plaintiffs allege that Defendants knowingly and willfully omitted material facts and made false representations in their dealings with Plaintiffs, (Docket No. 82 at 4), and that as a "result of Defendant's scheme, the [p]laintiff investors have lost their entire investments," (Docket No. 60 at 19).

Plaintiffs allege that codefendants Abnel Crespo, Joe Esparra, Antonio Marrero, and Raúl Villalobos ("the Promoters") held solicitation meetings along with Movant and Plaintiffs between June 2006 and December 2007, where they represented to Plaintiffs that their investments would be used to "create and operate a new HMO in Florida." (Id. at 14.) Based

---

[1] As discussed below in Part III, Plaintiffs do not actually cite to any Commonwealth statutes or caselaw when alleging their counts of "fraud" and "conspiracy."

Civil No. 11-1254 (JAF) -3-

on "Lugo's and the Promoters' representations and material omissions, which the [p]laintiff investors reasonably relied upon, the Plaintiffs invested approximately $4,852,666.67," receiving in exchange common stock in Caribe. (Id. at 4.) Instead of creating a new HMO, however, on August 31, 2007, Defendants bought Partnercare Health Plan, Incorporated, of Florida ("PartnerCare"), an existing HMO with troubled finances, for $3,411,128. (Id. at 15.) Upon purchase, Defendants changed PartnerCare's name to MD Medicare Choice, Incorporated ("MDMC"). (Id. at 16.)

Plaintiffs allege that, at the solicitation, Movant and the Promoters each deliberately failed to disclose to the investors that: PartnerCare was an existing HMO with multimillion dollar annual operating deficits between 2005 and 2007; investors' funds would be used to reduce PartnerCare's deficits instead of for operating PartnerCare going forward; an independent auditor had expressed doubt over PartnerCare's failure to meet the minimum capital and surplus requirements of the Florida Office of Insurance Regulation in March 2007; and "Defendants intended to and did misappropriate the investors' funds for their own personal use." (Docket Nos. 60 at 14; 82 at 3.) Plaintiffs also allege that Movant and the Promoters failed to disclose the corporate structure of both Caribe and PartnerCare. (Docket No. 82 at 3.) Plaintiffs further allege that, in December 2007, Defendants provided backdated corporate documents and misrepresented that they were "executed at the creation of and during the existence of Caribe."[2]  (Id.)

---

[2] For example, Defendants allegedly never provided all investors with a prospectus; only in "late 2007," did they provide some—but not all—Plaintiffs with a "Private Placement Memorandum" backdated to November 15, 2006, containing previously undisclosed information as to voting rights and classes of stock. (Docket No. 60 at 15.)

Civil No. 11-1254 (JAF)                                                                                                                  -4-

Plaintiffs allege that Movant and the Promoters "abused their positions of power within MDMC," by taking "exorbitantly high salaries,"[3] receiving funds indirectly from MDMC via payments to third parties for services unrelated to MDMC or Caribe operations, such as personal automobile leasing, a driver and apartment rental for codefendant Crespo, legal services in a lawsuit brought against Movant and codefendant Marrero in their personal capacities, and university tuition payments for Crespo's daughter. (Id. at 17.)

On August 27, 2008, the Florida Office of Insurance Regulation obtained a "Consent Order for Administrative Supervision and [a] Contingent Order of Liquidation" because of MDMC's failure to comply with the rules and regulations governing HMO operation. (Id. at 16.) Plaintiffs allege that during the period of state supervision of MDMC operations, Defendants "repeatedly continued to conceal the true facts" with promises that "Plaintiffs' investments would remain lucrative." (Id.) Prior to September 30, 2008, when MDMC was placed into liquidation and receivership, Movant and the Promoters never disclosed "any facts giving rise to the receivership" to Plaintiffs. (Id. at 18.)

On September, 30, 2010, Plaintiffs brought the present suit. (Docket No. 1.) Movant filed his first motion to dismiss, arguing that Plaintiffs failed to plead their claims with specificity. (Docket No. 54.) In response, Plaintiffs submitted an Amended Complaint, (Docket No. 60), and Movant filed the current Motion to Dismiss, again alleging insufficient specificity,

---

[3] Plaintiffs allege that individual defendants received salaries ranging from $369,639 to $719,649 over the "total contractual compensation allegedly permitted." (Docket No. 60 at 17.) Plaintiffs further allege that MDMC made payments, undisclosed to plaintiff investors, to companies owned by codefendants Villalobos and "Carrero," presumably a typographical error intended to read "Marrero." (Id. at 18.)

Civil No. 11-1254 (JAF)                                                                                          -5-

(Docket No. 65). In accordance with our order, (Docket No. 77), Plaintiffs have supplemented their amended complaint, (Docket No. 82).

## II.

## Rule 12(b)(6) Standard

A defendant may move to dismiss an action, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing such a motion, we accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the nonmoving party. SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).

"[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In considering a complaint's adequacy, we disregard "statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (internal quotation marks omitted). We then take as true what remains, "[n]onconclusory factual allegations . . . even if seemingly incredible." Id. On the basis of those properly pled facts, we assess the "reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.

## III.

## Analysis

Movant's motion to dismiss presents arguments regarding the sufficiency of all six of Plaintiffs' claims, which we discuss in turn below.

Civil No. 11-1254 (JAF)                                                                                              -6-

**A.    Section 10(b) and Rule 10b-5**

Plaintiffs must establish six elements to state a securities fraud claim under section 10(b)[4] and Rule 10b-5:[5] (1) a material misrepresentation or omission; (2) scienter, or a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) "reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'; (5) economic loss; and (6) 'loss causation,' *i.e.*, a causal connection between the material misrepresentation and the loss." Hill v. Gozani, 638 F.3d 40, 53 (1st Cir. 2011) (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005)).  Movant argues that Plaintiffs' amended complaint flunks the heightened pleading standard imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b), ("PSLRA") with respect to the elements of material misrepresentation, scienter, reliance, and loss causation.  (Docket No. 65 at 3–4.) For the reasons discussed below, we disagree.

**1.    Pleading Requirements for Securities Fraud: the PSLRA and Rule 9(b)**

"Under the PSLRA, as with any motion to dismiss under Rule 12(b)(6), we accept well-pleaded factual allegations in the complaint as true and view all reasonable inferences in the plaintiffs' favor." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008). "As with all allegations of fraud, a plaintiff must plead the circumstances of the fraud with

---

[4] Section 10(b) prohibits the "use or employ[ment], in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance . . . ." 15 U.S.C. § 78j(b).

[5] Rule 10b-5 declares it unlawful for any person,
"(a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates . . . as a fraud or deceit upon any person, in connection with the purchase or sale of any security."
17 C.F.R. § 240.10b-5.

Civil No. 11-1254 (JAF) -7-

particularity, pursuant to Rule 9(b)" of the Federal Rules of Civil Procedure. Hill, 638 F.3d at 55–56.

Even prior to the PSLRA, the First Circuit "already required a fraud plaintiff to specify each allegedly misleading statement or omission," including the time, place, and content of each statement or omission. Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999) (citing Romani v. Shearson Lehman Hutton, 929 F.2d 875, 878 (1st Cir. 1991)). The PSLRA goes beyond the requirements of Rule 9(b), requiring (1) pleadings to "'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading' and (2) 'if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" Hill, 638 F.3d at 55 (quoting § 78u-4(b)(1)). To guide our analysis, we note that although "the PSLRA does not require plaintiffs to plead evidence," the First Circuit has stated that "a significant amount of 'meat' is needed on the 'bones' of the complaint." Id. at 56 (quoting ACA Fin., 512 F.3d at 63).

**2.    Material Misrepresentation**

"To prevail on a [section] 10(b) claim, a plaintiff must show that the defendant made a statement that was "'misleading as to a material fact.'" Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1318 (2011) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 238 (1988)). Movant argues that Plaintiffs' allegations of omissions or misrepresentations fail as insufficiently specific. (Docket Nos. 65 at 1, 7; 87 at 3–5.) Movant claims that Plaintiffs'

Civil No. 11-1254 (JAF) -8-

failure to specify the materiality,[6] date, and place of each omission dooms the complaint to failure. (Id. at 8; see also Docket No. 87 at 4). As discussed above in Part III.A, because their complaint sounds in fraud, Plaintiffs must also plead "with particularity the circumstances constituting [the] fraud." See Tambone, 597 F.3d at 442 (quoting Fed. R. Civ. P. 9(b)). "To satisfy this particularity requirement, the pleader must set out the 'time, place, and content of the alleged misrepresentation with specificity.'" Id. (quoting Greebel, 194 F.3d at 193).

Movant argues that Plaintiffs' allegations as to the time and place of the solicitations fail as insufficient. (Docket No. 87 at 4.) With respect to the content and time of the material omissions, we find that Plaintiffs' allegations pass muster. Rule 9(b) seeks to provide a defendant with fair notice of a plaintiff's claim, to safeguard defendants' reputations, and to protect defendants from the institution of a strike suit. Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). Here, the allegations in the complaint provide ample notice of Plaintiffs claims, and offer sufficient detail as to content and context to identify the misrepresentations and omissions at issue. The complaint specifies not only the misrepresentations—for example, that Defendants were creating a new HMO[7]—and omissions—for example, hiding MDMC's disastrous finances

---

[6] Information is "material" if a reasonable investor would have viewed it as "having significantly altered the 'total mix' of information made available." N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc., 537 F.3d 35, 44 n.10 (1st Cir. 2008) (quoting Basic, Inc., 485 U.S. at 232). At this stage of the litigation we need not address Movant's arguments regarding materiality, Docket No. 87 at 6, as the issue of materiality is reserved for the finder of fact. ACA Fin.., 512 F.3d at 65.

[7] As summarized above in Part I, the alleged material misrepresentations and omissions include the fact that PartnerCare was an existing HMO with deficits of $5.9 million in 2006 and $8.9 million in 2007, that an independent auditor had expressed doubt over PartnerCare's ability to continue as a going concern in March 2007, that investors' funds would be used to reduce the large deficits, and most importantly, that "Defendants intended to and did misappropriate the investors' funds for their own personal use." (Docket Nos. 60 at 14; 82

Civil No. 11-1254 (JAF)                                                                                                -9-

from Plaintiffs—that led Plaintiffs to their beliefs about their investment, but also the context in which the misrepresentations and omissions were made, namely solicitation meetings held between June 2006 and December 2007. See Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 99 (1st Cir. 2007) (rejecting complaint for failure to specify content of misleading statements and "when and in what context such statements were made"); see also Goldenson v. Steffens, No. 10-cv-00440, 2011 U.S. Dist. LEXIS 85855, at *56 (D. Me. Aug. 4, 2011) (citing ACA Fin., 512 F.3d at 65) ("For both aspects of this alleged fraud, the Plaintiffs have alleged specific instances of the Defendants' representations by date and content sufficient to survive the higher pleading standard.").

Movant also argues that Plaintiffs have failed to specify "the precise content of the alleged misstatement" and how it misled Plaintiffs. (Docket No. 87 at 5.) The First Circuit has long required a "plaintiff to explain why the challenged statement or omission is misleading by requiring that 'the complaint . . . provide some factual support for the allegations of fraud.'" Greebel, 194 F.3d at 193–94 (citing Romani, 929 F.2d at 878). Given the state of PartnerCare's finances, and Defendant's access to such information, we find that Plaintiffs have provided factual support leading to "a reasonable inference that adverse circumstances existed at the time of the [solicitation], and were known and deliberately or recklessly disregarded by defendants," and never disclosed to the Plaintiffs.[8] Id., 194 F.3d at 193–94 (citing Romani, 929 F.2d at 878).

---

at 4.)

[8] For the foregoing reasons, we disregard Movant's argument that Plaintiffs failed to allege that Defendants knew the statements or omissions were misleading at the time they were made. (Docket No. 87 at 5.) Moreover, Plaintiffs allege that Defendants deliberately withheld—e.g. Defendants knew, but chose not to disclose—the material information regarding the finances of the HMO from the investors. (Docket No. 82 at 8–9.)

### 3. **Scienter**

With respect to the element of scienter, the PSLRA requires the pleading to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2)(A). "Scienter is 'a mental state embracing intent to deceive, manipulate, or defraud.'" ACA Fin., 512 F.3d at 58 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)). "In this circuit, a plaintiff may satisfy the scienter requirement with a showing of either conscious intent to defraud or 'a high degree of recklessness.'" Id. at 58 (citing Aldridge v. A.T. Cross Corp., 284 F.3d 72, 82 (1st Cir. 2002)). "Knowingly omitting material information is probative, although not determinative, of scienter." Miss. Pub. Emples. Ret. Sys. v. Boston Sci. Corp., 523 F.3d 75, 87 (1st Cir. 2008). Scienter, however, should be evaluated with reference to the complaint as a whole, by examining all of the facts alleged. ACA Fin., 512 F.3d at 59 (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007)).

The Supreme Court has held that the "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 127 S. Ct. at 2504–05. Furthermore, with respect to scienter, "competing inferences should be weighed against plaintiffs' preferred interpretation of the facts. ACA Fin., 512 F.3d at 59. The First Circuit has rejected the use of a rigid formula for "determining the sufficiency of allegations of scienter, instead preferring to rely on a fact-specific approach that proceeds case by case." Rodriguez-Ortiz, 490 F.3d at 96 (quoting

Ezra Charitable Trust v. Tyco Int'l, 466 F.3d 1, 6 (1st Cir. 2006)) (internal quotation marks omitted).

We reject Movant's argument that Plaintiffs allegations of scienter prove sparse and insufficient. (Docket No. 87 at 8.) Plaintiffs have alleged that Defendants "knowingly and willfully omitted material facts and made false representations" to plaintiff investors, as discussed above in Part II.A.2. (Docket No. 82 at 4.) Movant and the Promoters continued to mislead investors after buying PartnerCare and operating it as MDMC, backdated documents, and withheld information about the deficits and impending liquidation of MDMC until it was placed in receivership under state supervision. (See Docket Nos. 60; 82.) Taken as a whole, the allegations support a strong inference of scienter. See ACA Fin., 512 F.3d at 65 (noting that proof that a "defendant knowingly made false statements provides classic evidence of scienter") (quoting Aldridge, 284 F.3d at 83) (internal quotation marks omitted).

Movant argues that the allegations support the inference that "more likely than not" Movant "acted in good faith" in purchasing the financially distressed PartnerCare, "and then 'creating' an HMO . . . by paying down the deficits . . . [while] hoping to turn it around." (Docket No. 65 at 10–11; see also Docket No. 87 at 9.) We disagree. Plaintiffs have alleged that Defendants knew about—but concealed—the financial woes of the HMO from the beginning. We find Movant's suggested inference of good faith motives nowhere near "cogent and compelling," unlike the strong inference of scienter that arises from the allegations. See ACA Fin., 512 F.3d at 59 (noting that "where there are equally strong inferences for and against scienter, Tellabs now awards the draw to the plaintiff (citing Tellabs, 127 S. Ct. at 2504–05))).

Civil No. 11-1254 (JAF) -12-

The factual allegations in Plaintiffs' supplemented amended complaint, taken as a whole, lead to a strong inference that Movant intentionally misled plaintiff investors by making material omissions regarding the operation of Caribe and MDMC.

### 4. Reliance

Reliance by a plaintiff upon a "defendant's deceptive acts is an essential element of the § 10(b) private cause of action." Stoneridge Inv. Partners, v. Scientific-Atlanta, Inc., 552 U.S. 148, 159 (2008). Proof of reliance ensures a "proper 'connection between a defendant's misrepresentation and a plaintiff's injury.' The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—e.g., purchasing common stock—based on that specific misrepresentation." Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2185 (2011).

We reject Movant's argument that Plaintiffs failed to plead reliance with the required specificity. (Docket No. 87 at 10.) Plaintiff have adequately alleged reliance; the supplemented amended complaint alleges, inter alia, that based on Defendants' "representations and material omissions, which the [p]laintiff investors reasonably relied upon, the Plaintiffs invested approximately $4,852,666.67 in Defendant Caribe and received in return for their investments common stock in Defendant Caribe."[9] (Docket No. 82 at 3–4.)

---

[9] We disregard Movant's arguments regarding the dates of investment and misrepresentations; Plaintiffs have supplemented their amended complaint and provided new dates for their factual allegations. (See Docket Nos. 65 at 13; 82 at 2–4.)

Civil No. 11-1254 (JAF) -13-

### 5. Loss Causation

Loss causation, the final element in a 10b-5 claim, shows that a "defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss" and provides defendants with "notice of what the relevant loss might be or of what the causal connection might be between that loss and the misrepresentation." Dura Pharms., 544 U.S. at 346–47.

Again we reject Movant's argument that Plaintiffs fail to allege loss causation with specificity. (Docket No. 87 at 11–13.) Plaintiffs have adequately pleaded that Defendants' misrepresentations or omissions proximately caused the loss of their investments. (Docket No. 82 at 4.) Plaintiffs allege that Defendants' material omissions—regarding the plan for their investment, the mismanagement of funds, and the distressed finances of the supposedly-new HMO—proximately caused the loss of Plaintiffs' investments. (Id. at 4–5, 11.) Based on the foregoing, we find that Plaintiffs have adequately stated a 10(b) claim.

### B. Count II: Control Liability Under 15 U.S.C. § 78t(a)

"Section 20(a) [of the Exchange Act] imposes joint and several liability on every person who, directly or indirectly, controls any person liable for a securities fraud violation."[10] ACA Fin., 512 F.3d at 67–68 (quoting § 78t(a)) (internal quotation marks omitted). Plaintiffs allege that Movant acted as a "controlling person" of Caribe, since he controlled "its management, operations, business and policies, and the conduct of its agents." (Docket No. 60 at 21.) In response, Movant briefly recaps his arguments regarding Count I and reasons that if Plaintiffs'

---

[10] We note that Plaintiffs need not show scienter "according to the rigorous standards of the PSLRA" to state a claim under § 20(a). ACA Fin., 512 F.3d at 67–68 (quoting § 78t(a)).

Civil No. 11-1254 (JAF)                                                                                          -14-

allegations fail as insufficiently specific to support a 10(b) claim, their section 20(a) claim must fail—because section 20(a) only creates liability derivative of an underlying securities violation. (Docket No. 65 at 16.) As we have already rejected Movant's arguments with regard to Count I, we need not discuss them again. We found that Plaintiffs stated a 10(b) claim, and we now find that Plaintiffs have stated a claim for control liability under section 20(a).

### C. Count III: Sale of an Unregistered Security in Violation of Section 12(a)

Plaintiffs allege that Movant and Caribe violated section 12(a) of the Securities Act, which grants plaintiffs a private cause of action against any person who "offers or sells a security in violation of section 5" of the Act. § 77l(a)(1). Section 5, § 77e, p "generally requires the registration of all securities publicly offered by a company or persons controlling a company." Riseman v. Orion Research, Inc., 749 F.2d 915, 916 n.1 (1st Cir. 1984) (citing § 77e). We reject Movant's arguments that Plaintiffs "merely parrot" the language of the legal standard. (Docket No. 65 at 17.) Plaintiffs' factual allegations clearly state that Defendants lacked authorization to sell the shares of stock and failed to file any "statements or documents as required by the Securities Act." (Docket No. 60 at 22.)

### D. Count IV: Failure to Provide a Prospectus in Violation of Section 12(b)(2)

Section 5, § 77e, also "requires the use of a prospectus in connection with such public offering," Riseman, 749 F.2d at 916 n.1 (citing § 77e). Section 5(b)(2) makes it unlawful "to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of subsection (a) of section 10." § 77e(b)(2). Plaintiffs bring

another count under section 12(a) for violation of section 5, alleging that Defendants failed to include a prospectus in accordance with the requirements of section 5(b)(2). (Docket No. 60 at 22.) Again, we reject Movant's argument that Plaintiffs merely parrot the legal standard; Plaintiffs have alleged that Defendants failed to provide a prospectus at the time of their investment to some of the investors, and allege that even if Defendants had provided a prospectus at the time of the investment, it contained omissions or misrepresentations. (Id.) Thus, Plaintiffs have properly alleged facts to state a cause of action under § 771(a)(1).

### E. Count V: Commonwealth Fraud Claim

Plaintiffs also allege a count of "fraud" against Movant and Caribe, without offering any Puerto Rico statutes or caselaw to ground the claim. (Docket No. 60 at 23–24.) Movant argues that the Puerto Rico Uniform Securities Act, 10 L.P.R.A. § 890 (2008) ("PRUSA"), offers the exclusive remedy for securities fraud and that Plaintiffs' claims are time-barred under the relevant statute of limitations. (Docket No. 65 at 20–21.) We disagree with this argument, as the text of the PRUSA itself notes that the PRUSA "is not the exclusive remedy for actions based on the offer or sale of securities and other damages may be claimed pursuant to other rights and remedies provided by law." Verrecchia v. Paine, Webber, Jackson & Curtis, 563 F.Supp. 360, 368 (D.P.R. 1982) (citing § 890(h))).

However, even though the PRUSA does not prevent Plaintiffs from seeking other remedies, we agree with Movant that the PRUSA's two-year statute of limitations extinguishes any claims for fraud under Puerto Rico law, regardless of whether, as Plaintiffs argue, they

Civil No. 11-1254 (JAF) -16-

properly state a claim for fraud under Commonwealth law.[11] The PRUSA statute of limitation forbids suits brought "more than two (2) years after the sale contract has been executed." § 890(e). The Puerto Rico Supreme Court has held that "when faced with a conflict between provisions in a specific statute (here, [the PRUSA]) and the terms of a general law (here, [the unspecified fraud statute]), the provisions of the specific statute prevail." Basic Controlex Corp. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000) (citing PaineWebber Inc. v. First Boston (P.R.) Inc., 136 P.R. Dec. 541 (1994)). The PRUSA applies to securities fraud—the very conduct alleged in this case—and therefore its statute of limitations applies "to the relationship between the parties and overr[ides] the limitations period that otherwise might have applied." Id. at 454 (citing PaineWebber, 136 P.R. Dec. 541). December 2007 is the latest date of investment alleged by Plaintiffs, and they filed the present suit on September 30, 2010. Accordingly, we dismiss any potential fraud claim as barred by the PRUSA's two-year statute of limitations.

**F.     Count VI: "Conspiracy"**

Plaintiffs' final count accuses Defendants of "conspiracy," again without identifying any statutes or sources of law for the claim. (Docket No. 60 at 24.) Movant argues that the Puerto Rico Civil Code does not contain a "stand-alone cause of action for 'conspiracy'" under the law

---

[11] "Under Puerto Rico law, the party alleging fraud has the burden of demonstrating: (1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud." P.R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 66–67 (1st Cir. 2008) (citing 31 L.P.R.A. § 3408) (explaining elements of fraud claim under Puerto Rico contract law and noting the accompanying "strong underlying presumption in favor of good faith and honesty").

Civil No. 11-1254 (JAF)                                                                                        -17-

of Puerto Rico, and in the alternative, that Plaintiffs' bald allegations fail as insufficiently specific. (Docket No. 65 at 24.) Without reaching the issue of specificity as to the conspiracy allegations, we agree.

First, it "is an elementary proposition that a conspiracy is not in and of itself a civil wrong. It is the damages or injury caused by the wrongful acts done in furtherance of the conspiracy that constitute the gist of the action." Martinez v. Hernandez, 330 F. Supp. 856, 858 (D.P.R. 1971). Moreover, even if Plaintiffs had identified a legal basis for a conspiracy cause of action, the PRUSA's two-year statute of limitations discussed above in Part III.E. would again control and extinguish any such claim.

**G.     Motion to Strike**

Movant has filed a motion to strike Plaintiffs' supplement to the amended complaint, arguing that Plaintiffs' lack of strict compliance with Local Rule 83A(f), Local Rule 7(d), and the filing deadline. (Docket No. 83.) Plaintiffs' tardiness arose from refiling their initial supplemental pleading—which was timely filed—with the signature of local counsel to comply with Local Rule 83A(f). See L.Cv.R. 56(e) (D.P.R. 2009) (requiring signature of both pro hac vice attorney and local counsel for all filings). Finally, we reject Movant's argument that the additional two pages in excess of the fifteen permitted by Local Rule 7(d) merits striking the entire supplemental pleading from the record. Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 19 (1st Cir. 2005) (quoting United States v. Diaz-Villafane, 874 F.2d 43, 46 (1st Cir. 1989)) (internal quotation marks omitted) ("In general, it is for the district court to determine what departures from its rules may be overlooked.").

## IV.

## Conclusion

For the foregoing reasons, we hereby **GRANT IN PART** and **DENY IN PART** Movant's motion to dismiss (Docket 65); we **DISMISS** Plaintiffs' claims for fraud and conspiracy under Puerto Rico law. We **DENY** Movant's motion to strike (Docket No. 83). Plaintiffs' claims for securities fraud under the following laws remain for adjudication: (1) section 10(b) of the Exchange Act and Rule 10b-5, against all Defendants; (2) section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Movant; (3) section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), against Movant and Caribe; and (4) section 12(b)(2) of the Securities Act, 15 U.S.C. § 77e(a), against Movant and Caribe.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 30th day of September, 2011.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
United States District Judge